*S j - / 2 ?*

MILTON BYRD, APPELLEE, v. ELMER G. COCHRAN ET
UX., APPELLANTS, AND PHILADELPHIA MORTGAGE
& TRUST COMPANY ET AL., APPELLEES.

FILED FEBRUARY 6, 1894.    No. 5190.

1. **Affidavit for Mechanic's Lien:** VALIDITY OF JURAT.
   Where an affidavit, attached to a mechanic's lien, purports to
   have been sworn to before a notary public and shows upon its
   face that it was taken or made without the jurisdiction of the
   notary public it is invalid, insufficient to perfect the lien, and
   renders it incompetent as evidence.

2. **Mechanics' Liens:** CONTRACTS: MATERIALS USED IN TWO
   BUILDINGS: SUFFICIENCY OF STATEMENT. When a subcon-
   tractor paints two separate houses and furnishes the paint and
   other materials necessary for use in the painting, contracting
   for such work and materials with the original contractor, the
   consideration for such agreement being in one sum for both jobs,
   in order to recover upon a mechanic's lien filed against one of
   the houses and the lot upon which it stands, it must be shown
   that the amount charged against the one house and lot is the
   value of the labor performed upon, and materials furnished for,
   such house, or an estimate made by some method or plan which
   will produce a certain definite result, and mere approximation
   or guess work will not suffice to establish the lien.

3. ———: REVIEW. THE EVIDENCE examined, and *held* insufficient
   to establish mechanics' liens or to support a decree for their en-
   forcement.

APPEAL from the district court of Douglas county.
Heard below before WAKELEY, J.

The opinion contains a statement of the case.

*B. F. Cochran*, for appellants:

The affidavit for a lien shows the venue to be Webster
county. The attesting seal is that of a notary public of
Douglas county. The affidavit was insufficient, and the
filing of the paper did not create a lien. (Secs. 5, 6, ch. 61,

Comp. Stats.; *Blair v. West Point Mfg. Co.*, 7 Neb., 147; *Colman v. Goodnow*, 36 Minn., 9; *Davis v. Rich*, 2 How. Pr. [N. Y.], 86; *Sandland v. Adams*, 2 How. Pr. [N. Y.], 127; *Snyder v. Olmsted*, 2 How. Pr. [N. Y.], 181.)

One who contracts directly with the owner, and for a single contract price, need not itemize his account; yet as to subcontractors the rule is different. (2 Jones, Liens, sec. 1416; *Gray v. Dick*, 97 Pa. St., 142.)

*Montgomery, Charlton & Hall*, contra, cited: *Manly v. Downing*, 15 Neb., 637; *Ballou v. Black*, 17 Neb., 398, 21 Neb., 146; *Doolittle v. Plenz*, 16 Neb., 153; Phillips, Mechanics' Liens [2d ed.], 373; *Kerbaugh v. Henderson*, 3 Phila. [Pa.], 17; *Davis v. Farr*, 13 Pa. St., 167; *Edwards v. Edwards*, 24 O. St., 402.)

*John O. Yeiser*, for appellee Byrd.

HARRISON, J.

In this case the plaintiff Milton Byrd commenced an action in the district court of Douglas county to foreclose a mechanic's lien, alleging in his petition that defendant Elmer G. Cochran owned, or was the reputed owner of, a certain lot or small piece of land in said county; that on or about the first of June, 1889, said Elmer G. Cochran, entered into a contract with W. M. Bell and T. J. Hines, whereby they agreed to furnish labor and materials and erect for Cochran a dwelling upon the said land; that on the 29th day of August said contractors employed the plaintiff Byrd to do the plastering and cement the cellar, which work was done by plaintiff, and that the contractor agreed to pay him therefor as follows: For the plastering, nine cents per yard, there being 850 yards, amount due for same, $76.50; cementing cellar, $2.50. That the said contractors gave him an order on Cochran for the above amount, which order is set forth in full in

Byrd v. Cochran.

the petition; that he has not been paid; that he executed in due form, and within the time required by law, lien papers, and filed the same with the recorder of Douglas county, Nebraska, and after the usual allegations of such petitions, asks foreclosure of the lien and judgment against the contractors.

Defendant Elmer G. Cochran answered the plaintiff's petition as follows:

"1. Denies each and every allegation contained in the second paragraph of said petition, except that the particulars of the alleged contract are unknown to the plaintiff. .

"2. Denies that he ever employed the plaintiff to do any work whatever.

"3. Denies that he ever agreed to pay the plaintiff for any work; and

"4. Denies that he ever 'agreed upon a settlement of the amount due plaintiff on said work, in a written order' or otherwise.

"5. Said defendant also denies that the plaintiff has acquired any lien on the premises described in his petition."

Gertrude Cochran, wife of Elmer G. Cochran, filed the following answer to plaintiff's petition:

"1. She denies each and every allegation contained in the second paragraph of said petition, except the allegation of want of knowledge of the particulars of the alleged contract.

"2. Defendant has not sufficient knowledge or information to form a belief as to the truth of the allegations in the third paragraph of said petition, and therefore denies each and every allegation contained in said third paragraph.

"3. Defendant further answering alleges that said petition does not state facts sufficient to constitute a cause of action."

The venue of the affidavit to the lien was as follows:

"State of Nebraska, $\Big\}$ ss."
  Webster County.

And the date: "Omaha, Neb., Oct. 14, 1889."

And the jurat and seal:

"Sworn to by said Milton Byrd before me, and by him subscribed in my presence, this 15th day of Oct., '89.

"B. R. BALL,

"*Notary Public in and for the County and State aforesaid.*"

Seal: "B. R. Ball. Commission expires Jan. 20, 1892. Notarial Seal. Douglas County, Nebraska."

J. A. Fuller & Co. appeared and by leave of the court filed answer and cross-petition. Their claim being a contested one, we will copy the answer and cross-petition below:

"Come now the defendants J. A. Fuller & Co., and by leave of the court, first obtained, file this, their separate answer to the petition of the plaintiff, and allege that the said J. A. Fuller & Co. is a copartnership, of which John A. Fuller and John H. Dumont are the only members.

"As to the truth of the allegations in plaintiff's petition contained, these defendants have no knowledge or information upon which to form a belief, and therefore deny the allegations therein contained.

"For their cause of action herein these defendants allege that on or about the 29th day of June, 1889, the defendant Joe Johnson entered into a contract with the defendant W. M. Bell, whereby he agreed, in consideration of the payment to him of the sum of $380, to furnish the material and to do the work and labor in the painting of two houses then in process of construction, one house on the premises described in plaintiff's petition, to-wit: Commencing with a point thirty-three (33) feet east and thirty-three (33) feet north of the southwest corner of section twenty-one (21), township fifteen (15), range thirteen (13) east, in Douglas county, Nebraska, running thence east one hundred twenty-four (124) feet, thence north fifty (50) feet, thence west one hundred twenty-four (124) feet, thence south fifty (50) feet to the place of beginning; and the other house upon prem-

ises likewise described.    A copy of the written proposition
of the said W. M. Bell to pay the said Joe Johnson the
sum of $380 for the painting of said houses is attached to
the mechanic's lien hereinafter referred to, which lien is
attached to this answer, marked 'Exhibit A,' and made a
part hereof.

"In pursuance of said contract the said Joe Johnson
furnished the material and performed the labor and did the
painting of said house according to the contract between
the owner and said Bell, and the fair value of the work
and labor performed and the materials used in the painting
of the house upon the premises above described is the sum
of $177.50, of which amount affiant has been paid, to ap-
ply upon the amount due him for painting the house upon
the premises above described, the sum of $115, leaving a
balance due thereon of $62.50, no part of which has been
paid him, although payment thereof has been demanded,
but refused.    At the time said Joe Johnson entered into
said contract with the said W. M. Bell the said Bell was
engaged. as a contractor and builder in the city of Omaha,
and as such had entered into a contract with the defendant
Elmer G. Cochran for the erection and painting of said
house upon said above described premises.    At the time
said Bell entered into said contract with the said Cochran
the said Cochran was the owner in fee of said above de-
scribed premises.

"On the 20th day of November, 1889, the said Joe
Johnson made an account in writing of the material fur-
nished and labor performed in the painting of said house,
and after making oath thereto as required by law, on the
21st day of November, 1889, and within sixty days of the
time of furnishing said material and performing said labor
under said contract, filed said account and affidavit in the of-
fice of the register of deeds of Douglas county, Nebraska,
claiming a mechanic's lien upon the said premises and the
building thereon.    On the 21st day of November, 1889,

and after the filing of said lien as aforesaid in the register's office, the said Joe Johnson, for a valuable consideration, sold and assigned the said mechanic's lien to these defendants, who are now the owners and holders of the same. The said Joe Johnson paid for recording his said lien in the register's office the sum of $1.25.

"There is now due these defendants, upon the said mechanic's lien, the sum of $62.50, and the sum of $1.25 for recording the same, with interest upon the said amounts at the rate of seven per cent per annum from the 26th day of September, 1889."

Prayer was for judgment against the contractor, and foreclosure of the lien.

The agreement between contractor and subcontractor, the statement of account, affidavit for lien, and assignment of lien to Fuller & Co. were as follows, being Exhibits "C," "E," and "D":

### Exhibit "C."

"Omaha, Neb., June 29, 1889.

"I hereby agree to pay to Joe Johnson the sum of three hundred and eighty ($380) dollars for painting two houses at 36 & Pacific, according to plans and specifications; one house for E. G. Cochran, one for H. E. Cochran.

"W. M. Bell."

### Exhibit "D."

"For value received I hereby sell, assign, and transfer to J. A. Fuller & Co. a certain mechanic's lien for the sum of $62.50, on the following described premises, to-wit: Commencing at a point 33 feet east and 33 feet north of the southwest corner of section 21, township 15, range 13 east, in Douglas county, Nebraska, running thence east 124 feet, thence north 50 feet, thence west 124 feet, thence south 50 feet to the place of beginning; which lien is dated November 20, 1889, and was filed for record on the next day in the office of the register of deeds of Douglas county,

Nebraska, against Elmer G. Cochran, the owner of said premises.

"Witness my hand this 21st day of November, 1889.

"JOE JOHNSON."

EXHIBIT "E."

"JOE JOHNSON
    v.     }  OMAHA, NEB., Nov. 20, 1889.
W. M. BELL ET AL.

"W. M. Bell, To Joe Johnson, Dr.

"To balance due for material furnished and labor performed in the construction of one frame dwelling house, belonging to Elmer G. Cochran, upon the following described property, to-wit: Commencing at a point thirty-three (33) feet east and thirty-three (33) feet north of the south corner of section twenty-one (21), township fifteen (15), range thirteen (13) east, in Douglas county, Nebraska, running thence east one hundred and twenty-four (124) feet, thence north fifty (50) feet, thence west one hundred and twenty-four (124) feet, thence south fifty (50) feet to the place of beginning, $62.50.

"STATE OF NEBRASKA, }
  DOUGLAS COUNTY.  } ss.

"Joe Johnson, being first duly sworn according to law, makes oath and says that he has furnished the material and performed the labor necessary for the painting of a certain frame dwelling house upon the following described premises, to-wit: Commencing at a point thirty-three (33) feet east and thirty-three (33) feet north of the southwest corner of section twenty-one (21), township fifteen (15), range thirteen (13) east, in Douglas county, Nebraska, running thence east one hundred and twenty-four (124) feet, thence north fifty (50) feet, thence west one hundred and twenty-four (124) feet, thence south fifty (50) feet to the place of beginning. The said materials were furnished and the said labor performed under and by virtue of a written agreement signed by W. M. Bell, who himself had entered into a con-

tract with the said Elmer G. Cochran, for the erection and construction of said frame dwelling house. A copy of said written agreement between affiant and W. M. Bell is hereto attached, marked Exhibit 'A' and made a part hereof. According to said agreement, said affiant was to furnish all the labor necessary for the painting of the above described house, and of another house owned by Charlotte A. Cochran, which was at the same time being built by W. M. Bell upon premises other than those above described, for all of which affiant was to receive the sum of $380; that the material furnished and labor performed upon the above described dwelling house belonging to the said Elmer G. Cochran amounted in the aggregate to the sum of $177.50, of which amount affiant has been paid the sum of $115, leaving a balance due thereon of $62.50; for which amount, with interest at the rate of seven per cent per annum from the 26th day of September, 1889, at which time the painting of the house was completed, affiant, by virtue of the statutes of Nebraska in such case made and provided, claims a lien upon the above described premises and the building thereon belonging to Elmer G. Cochran."

To this answer and cross-petition Elmer G. Cochran filed answer as follows:

"The defendant Elmer G. Cochran, for his answer to the cross-petition of John A. Fuller & Co., denies each and every allegation contained in said cross-petition, except the description and ownership of the premises and the contract between W. M. Bell and this defendant."

The case was dismissed without prejudice as to W. M. Bell, the contractor. Hines was not served. A trial was had, and findings made, and decree entered, in favor of plaintiff and Fuller & Co., foreclosing their liens and ordering sale of the property, to which the Cochrans excepted, and bring the case here on appeal.

The proceedings at the opening of the trial of the case in the court below, in regard to the lien of plaintiff and the

evidence introduced as to his lien, were very short, and I think it best to give them here in full:

"On motion of plaintiff, the case is dismissed without prejudice as to defendant W. M. Bell.

"Defendants Cochran move to dismiss the action, for the reason that contractor W. M. Bell is not a party. Motion overruled. The defendants except.

"Defendants Cochran and wife object to the introduction of any evidence in the case, for the reason that the plaintiff's petition does not state a cause of action against either of them. Objection overruled. Defendants Cochran except.

"Plaintiff, on motion, is allowed to amend petition, to which defendants Cochran except.

"Byron G. Burbank, sworn for plaintiff and examined by Mr. Yeiser, testified as follows:

"Q. I will ask you if you are acquainted with the signature of William Bell, and if this is his signature (handing witness paper)?

"A. I am acquainted with his signature to this extent: I have seen him write his name, and I believe this to be his signature.

"Plaintiff offers in evidence paper identified by witness, same purporting to be an order given by Mr. W. M. Bell on E. G. Cochran to pay amount due. Paper marked 'Exhibit A.'

"Plaintiff also offers in evidence his original mechanic's lien in this case. Same marked 'Exhibit B.'

"Objected to by defendants Cochran, for the reason that it is not a sworn statement of the amount due. Objections overruled. Defendants Cochran except.

"Plaintiff rests.

"Defendants Cochran move the court to dismiss the case, for the reason that the plaintiff has proved no cause of action. Motion overruled. Defendants Cochran except."

It will be noticed that the affidavit of plaintiff was

made, according to venue, in Webster county, Nebraska, and the notary states in the jurat that the affidavit was sworn to before him as notary public in and for the county and state aforesaid. The seal impression which he attached is apparently the seal of the notary who signed the jurat, or at least has his name upon its face, the words "notarial seal" and "Douglas county, Nebraska." If the affidavit was made and oath taken, as shown by its face, in Webster county, Nebraska, but before a notary public of Douglas county, Nebraska, as the impression of the seal shows, would the filing of such an affidavit fulfill the requirements of the mechanics' lien law that a sworn statement shall be filed? The Compiled Statutes of Nebraska, 1893, page 597, section 5, provide as follows: "Each notary public, before performing any duties of his office, shall provide himself with an official seal, on which shall be engraved the words 'notarial seal,' the name of the county for which he was appointed and commissioned, and the word 'Nebraska,' and in addition, at his option, his name and the date of expiration of his commission or the initial letters of his name, with which seal, by impression, all his official acts as notary public shall be authenticated." The next section (6), on same page, provides: "Every person, during the term of his office, so appointed, commissioned and qualified to the office of notary public, is hereby authorized and empowered, within the county for which he was appointed to such office, to administer oaths and affirmations in all cases." It is clear from the last section that a notary is only authorized and empowered to act in administering oaths and affirmations within the county for which he was appointed and commissioned notary, and from the former section it is just as plain that each official act of such notary, each affidavit made before him, must be authenticated by his official seal. The plaintiff was required by the law, under and by virtue of which he sought to establish and perfect his lien, to file a sworn statement, and I do not

think it can be said that he has done so. His failure to do so was fatal to his claim of lien. If the conclusion is that the notary was of Douglas county, then the recitals of the affidavit show that he was acting in Webster county. His acts would be of no avail and not entitled to recognition, or to be introduced in evidence.

The objection that the affidavit of service.of summons has no venue, is well taken. "An affidavit should show on its face that it was taken within the officer's jurisdiction." (*Blair v. West Point Mfg. Co.,* 7 Neb., 147; *Davis v. Rich,* 2 How. Pr. [N. Y.], 86; *Sandland v. Adams,* 2 How. Pr. [N. Y.], 127; *Snyder v. Olmsted,* 2 How. Pr. [N. Y], 181.) In the case at bar, a fair conclusion from the face of the recitals of the affidavit is that it was taken without the notary's jurisdiction, and for this reason it was invalid and was not a verification of the lien. If on the other hand it is claimed, or can be said, that the face of the affidavit shows that the officer was a notary in and for Webster county, then the seal used, not being his proper seal, would leave the affidavit as though no seal had been attached and without the authentication required by law, which would be fatal to it as a sworn statement of a claim for lien. Our statute requires a sworn statement to be filed. "Where a statute declares that the notice to create a lien 'shall be verified' before filing, it is essential to the creation of the lien that it should be sworn to in the manner prescribed. The want of verification, or of a sufficient verification, is a defect which goes to the whole claim and cannot be amended." Phillips, Mechanics' Liens [2d ed.], sec. 336, p. 597; *Colman v. Goodnow,* 36 Minn., 9, 29 N. W. Rep., 338; *Finane v. Las Vegas Hotel & Imp. Co.,* 3 N. M., 256, 5 Pac. Rep., 725; *Minor v. Marshall,* 27 Pac. Rep. [N. M.], 481; *Gates v. Brown,* 25 Pac. Rep. [Wash.], 914; *Stetson & Post Mill Co. v. McDonald,* 32 Pac. Rep. [Wash.], 108.)

The only evidence introduced by plaintiff was contained

in exhibits "A" and "B," "A" being the order given by W. M. Bell to plaintiff on E. G. Cochran, and "B" the lien, or claim of lien, as filed and recorded. Under the issues joined in the case between the plaintiff and principal defendants, Cochran, this was clearly insufficient to entitle the defendant to a decree for the foreclosure of the lien. The account and affidavit filed in the clerk's office were evidence only of the facts that they were filed within the time required by law and of their own contents as touching their sufficiency. (*Hassett v. Curtis*, 20 Neb., 162.) The cross-petitioners, J. A. Fuller & Co., are assignees of the claim or lien of Johnson, who, as appears from the record, was a painter and contractor with Bell & Hines, the original contractors, to paint the house in question in this case, and another one belonging to another person and situated on a different lot and in no way connected with the one in suit. He agreed to paint the two for a lump sum of $380, and apportioned it according to his own judgment or opinion, and filed his claim of lien for what he states therein is a balance due, giving no items. His evidence bearing upon the question of the labor performed and materials used in the painting of this house is as follows:

Q. What did you do, Mr. Johnson, after the execution of that paper?

A. I painted two houses for the sum of $380.

Q. According to the plans and specifications?

A. Yes, sir.

Q. What would be a fair proportion of the charge for these houses, for doing the painting on this house in question?

Objected to, as incompetent, immaterial, and irrelevant. Objection overruled. Defendants Cochran except.

A. $177.50.

Q. When did you finish the painting of this house?

A. The 26th of September, 1889.

Q. On that contract, how much has been paid?

A. There has been $115 paid.

Q. How much were you paid in all of that $380.

A. $230.

Q. Of that $230, one-half was applied on one house and one-half on the other?

A. Yes, sir.

Cross-examination, by Mr. Cochran:

Q. You have stated that the fair valuation of the labor and materials which you put on this house was a certain amount. How do you know that?

A. Well, I can tell very near.

Q. How do you make that estimate? How do you know that it is a fair value for the labor and materials that went into this building?.

A. I can tell that by the amount of work there is to a building of that size.

Q. How do you make your estimate as to the value of the labor and materials that were put into this house?

A. I make it this way: This house is not as big as the other one, and there is not as much work or material required on it as the other one. So as near as I can judge, there is that much difference.

Mr. Montgomery: Twenty-five dollars?

A. Yes, sir.

Mr. Cochran: How much painting material did you use on this house? How much oil did you use there?

A. Well, I can't give the exact amount of oil I used there.

Q. What other materials did you use?

A. I used white lead and different colors.

Q. How much white lead did you use in painting this house?

A. I couldn't give any exact amount.

Q. How much of what you call colors did you use as coloring materials in that house?

A. I couldn't say just exactly how much I did use.

Q. How many days' work did you put in on this house?

A. Well, I couldn't say just how many days.

Q. You went back and forth between the two houses, according as the work was done on the two places?

A. Yes, sir.

Q. You sometimes worked part of a day on one and part of a day on the other?

A. Yes, sir.

The Court: How much were you to have for painting both of these houses?

A. I was to get $380.

Q. You think this house in question is not quite so large as the other?

A. Yes, sir.

Q. Have you not charged quite one-half on this?

A. No, sir.

Q. But when you got $230 you credited one-half on each house, without regard to size?

A. Yes, sir.

The contracts for the erection of the two houses were separate agreements with the owners of the lots respectively and had no connection in any manner. Some authorities hold, under a state of facts similar to those in this case, no claim for lien could be filed or enforced. In our state, where houses were erected for one owner upon three adjoining lots under entire contract, it was held that the cost and expense of erecting all the houses would be apportioned among the lots according to the value of the labor and materials expended upon each. (*Doolittle v. Plenz*, 16 Neb., 153.) I am inclined to the opinion that Johnson had the right to file his lien, and it could be enforced against each lot and house for the value of labor performed and materials furnished and used on each house, but in the evidence now given in support of the lien filed by Johnson (now owned by Fuller & Co.) there is no attempt made to show what was the value of either the labor or materials,

except that Johnson says he estimates it by looking at the houses, and as one is smaller than the other, he apportions and charges against it the smaller sum, making an approximation or only a guess.   On cross-examination he states that he cannot tell how many days' labor was performed on this house and does not know how much paint and color was used.   There is no valuation of any labor or materials shown, and all that is shown is that the price for painting the two houses, agreed upon between the original contractor and the subcontractor, was divided according to an estimate made by the subcontractor in the manner before stated and a claim of lien filed for a balance due on the same. It would have been no hardship for the subcontractor to have kept an account of the labor performed and materials furnished on each house in order to have some certain basis for his claim of lien.   The cross-petitioners failed to prove facts necessary to establish their lien or to support the decree in their favor.   The agreement between the contractor and subcontractor is not the measure of the owner's responsibility or liability; his building and premises are bound for no more than the value of the work done and materials furnished by the subcontractor. (*Gray v. Dick*, 97 Pa. St., 142; 2 Jones, Liens, sec. 1416.)   The decree of the district court is set aside, the decision reversed, and judgment ordered in this court for the principal defendants as to both claims.

DECREE ACCORDINGLY.